# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 30, 2013

No. 12-30274

Lyle W. Cayce
Clerk

RACHEL JUINO,

Plaintiff-Appellant, Cross-Appellee,

v.

LIVINGSTON PARISH FIRE DISTRICT NO. 5,

Defendant-Appellee, Cross-Appellant.

Appeals from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and SMITH and WIENER, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Rachel Juino ("Juino") appeals from the district court's dismissal of her claim of sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The district court ruled that Juino, a volunteer firefighter, was not an "employee" within the meaning of Title VII. The existence of an employment relationship in the volunteer context is an issue of first impression in this circuit. For the following reasons, we AFFIRM.

## I.

Livingston Parish Fire District No. 5 ("District 5") is a political subdivision of the state of Louisiana that primarily relies on volunteers to provide fire and emergency services. From November 2009 to April 2010, Juino was a volunteer

No. 12-30274

firefighter with District 5. Juino claims that during her tenure, fellow firefighter John Sullivan ("Sullivan") subjected her to sexual harassment on several occasions. Juino allegedly reported Sullivan's conduct to superiors, but claims that no disciplinary action was taken. Juino terminated her services with District 5 on April 2, 2010.

After not receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") within six months of filing her claim, Juino filed suit in the district court, alleging sexual harassment and retaliation under Title VII; violations of the Louisiana Employment Discrimination Law, La. R.S. § 23:301 *et seq.*; and violations of the Louisiana whistleblower statute, La. R.S. § 23:967 *et seq.* Juino also asserted state law claims for assault, battery, and intentional infliction of emotional distress.

District 5 moved for partial summary judgment, claiming that it was not an "employer" for purposes of Title VII because it had only three paid "employees" in 2010 and, as a result, it did not satisfy Title VII's fifteen-employee minimum requirement. Alternatively, District 5 maintained that, assuming it was an "employer" for purposes of Title VII, Juino's status as a volunteer rendered her Title VII and state law claims non-cognizable. Juino opposed the motion, contending that District 5 was an "employer" because its membership roster included between 50 and 70 firefighter/members who provided firefighting service and, like her, received similar benefits.

The district court treated District 5's motion for partial summary judgment as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) by concluding that the minimum "employee" requirement was a jurisdictional issue and dismissing the case on this basis.[1] With respect

---

[1] On cross-appeal, District 5 contends that the district court erred in construing its motion for partial summary judgment as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). We conclude that the district court erred, as *Arbaugh v. Y & H Corp.* states: "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief,

2

No. 12-30274

to the merits of the case, the district court noted that this circuit has not adopted a test for evaluating the employment relationship in the volunteer context, but stated its preference for the Second Circuit's threshold-remuneration test as articulated in *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997). Pursuant to this test, courts analyze, as a threshold matter, whether the plaintiff-volunteer has received remuneration supporting a plausible employment relationship. The district court also prudently analyzed Juino's claim under this circuit's "economic realities/common law control test," which is applied in resolving the employee-independent contractor conundrum. Under both tests, the district court concluded that Juino was not an "employee" for purposes of Title VII. The district court declined to exercise supplemental jurisdiction over the remaining state law claims. Juino now appeals.

## II.

We review the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view all facts and evidence in the light most favorable to the non-moving party when considering a motion for summary judgment. *Dameware Dev.*, *L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206-07 (5th Cir. 2012) (citation omitted).

---

not a jurisdictional issue." 546 U.S. 500, 516 (2006). We therefore review this appeal on the merits of the motion for summary judgment.

No. 12-30274

## III.

### A.

Pursuant to Title VII, it is illegal "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Therefore, Title VII prohibits sexual harassment that takes the form of a tangible employment action, such as a demotion or denial of promotion, or the creation of a hostile or abusive working environment. *Lauderdale v. Tex. Dep't. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)) (other citation omitted).

In order to be subject to liability pursuant to Title VII, an employer must have at least fifteen employees "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

An "employee" under Title VII is defined in pertinent part as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court has noted that this definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (describing same definition under ERISA). "Recognizing the circularity in such a definition, the Supreme Court explained that 'when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 226 (5th Cir. 2004) *rev'd on other grounds by* 546 U.S. 500 (2006) (quoting *Darden*, 503 U.S. at 322-23). The Supreme Court has stated,

> In determining whether a hired party is an employee
> under the general common law of agency, we consider

No. 12-30274

> the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (quoting *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52 (1989)) (other citation omitted).

We apply the "economic realities/common law control test," a variation of the common law agency test, in determining whether a party is an employee or an independent contractor. *See Diggs v. Harris Hosp.–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (citation omitted). The economic-realities portion of the test asks whether putative employees, "as a matter of economic reality, are dependent upon the business to which they render service." *Id.* at 272 n.3 (citation omitted). The common law control portion of the test, which courts should emphasize over the economic realities portion, assesses "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed." *Id.* at 272 (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)). We have stated that the following factors are pertinent to the analysis:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether

No. 12-30274

the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 272-73 (citation omitted).

"In most cases where an attempt has been made to discern the contours of the 'conventional master-servant relationship,' it has been because a court has been asked to consider whether, under a particular statute, a party is an employee or an independent contractor." *O'Connor*, 126 F.3d at 115 (citations omitted); *see*, *e.g., Darden*, 503 U.S. at 322-23 (considering ERISA, 29 U.S.C. § 1132 (a)); *Reid*, 490 U.S. at 739-40 (considering Copyright Act of 1976, 17 U.S.C. § 101); *Diggs*, 847 F.2d at 272 (considering Title VII); *Broussard v. L.H. Bossier Inc.*, 789 F.2d 1158, 1160-61 (5th Cir. 1986) (considering Title VII). As this court has not determined the test for volunteers, our sister circuits provide persuasive authority.[2]

---

[2] District courts within this circuit appear to split on whether remuneration should be an independent antecedent requirement in determining if one is a covered employee under Title VII. *Compare Noah v. Cmty. Place*, No. 3:09-CV-594, 2011 WL 237701, at *2 (S.D. Miss. Jan. 24, 2011) (stating that "economic realities/common law control test" is the appropriate test in determining whether a medical trainee was an "employee" under Title VII), *with Moran v. Harris Cnty.*, No. H-07-582, 2007 WL 2534824, at *1-2 (S.D. Tex. Aug. 31, 2007) (concluding that whether a reserve deputy constable received actual financial benefits was a threshold requirement in determining whether he was an "employee" under Title VII).

No. 12-30274

B.

Cases from other circuits considering the presented issue have split into two camps. The Second, Fourth, Eighth, Tenth, and Eleventh Circuits have adopted the threshold-remuneration test. Under this test, courts conduct a two-step inquiry by requiring that a volunteer first show remuneration as a threshold matter before proceeding to the second step – analyzing the putative employment relationship under the common law agency test. Remuneration may consist of either direct compensation, such as a salary or wages, or indirect benefits that are not merely incidental to the activity performed. On the other hand, the Sixth and Ninth Circuits view remuneration as only one, nondispositive factor in conjunction with the other common law agency test factors. For reasons discussed below, we adopt the threshold-remuneration test and hold that Juino is not an "employee" within the meaning of Title VII.

C.

The Eighth Circuit's decision in *Graves v. Women's Professional Rodeo Association, Inc.*, 907 F.2d 71 (8th Cir. 1990), and the Second Circuit's decision in *O'Connor,* 126 F.3d 112, are the leading cases for the threshold-remuneration cohort.

In *Graves*, the Eighth Circuit addressed whether the membership list of the Women's Professional Rodeo Association (WPRA) could be construed as a list of employees for purposes of Title VII. 907 F.2d at 72. In that case, Graves filed a Title VII action, alleging sex discrimination because he was denied membership into the WPRA. *Id.* at 71. Graves contended that the WPRA was an "employer" for purposes of Title VII because its members were "employees" of the WPRA. *Id.* at 72. In rejecting Graves's argument, the Eighth Circuit applied the dictionary definition of employee, employer, and employ, and concluded that,

> Central to the meaning of these words is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services–that person being the employee. Compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, but it is an essential condition to the existence of an employer–employee relationship.

*Id.* at 73.

The *Graves* court then observed,

> The relationship between WPRA and its members simply bears no resemblance to that between an employer and employee within the accepted usage of those terms: no compensation is made, only prize money won–and that is not supplied by the alleged employer nor does the recipient necessarily come from the postulated class of employees. . . . Only by skipping this crucial and elementary initial inquiry–whether there exists an employment relationship . . . can Graves make an implausible argument sound even marginally plausible.

*Id.*

Accordingly, the *Graves* court found it "unnecessary" to proceed to the second step of the inquiry as members of the WPRA did not receive compensation. *Id.* at 74. The court explained that "[c]ourts have turned to analyses such as the 'economic realities' test and 'right to control' test under Title VII only in situations that plausibly approximate an employment relationship." *Id.*

Similarly, the Second Circuit in *O'Connor* considered whether an unpaid intern who filed a claim for sexual harassment under Title VII was an "employee." 126 F.3d at 113-14. Although the Second Circuit acknowledged the Supreme Court's pronouncement that the common law agency test should be used when "employee" is not adequately defined by Congress, the *O'Connor* court

distinguished the application of the common law agency test in the volunteer context. To this end, the court stated,

> Both parties on appeal (and the district court below) addressed themselves to the question of whether or not O'Connor was an employee within [the common law agency] framework. However, we think that this analysis is flawed because it ignores the antecedent question of whether O'Connor was hired by Rockland for any purpose. As the Supreme Court suggests, the common feature shared by both the employee and the independent contractor is that they are "hired part[ies],"[*Reid*, 490 U.S. at 751-52], and thus, a prerequisite to considering whether an individual is one or the other under common-law agency principles is that the individual have been hired in the first instance. That is, only where a "hire" has occurred should the common-law agency analysis be undertaken.

*O'Connor*,126 F.3d at 115 (second alteration in original).

In accordance with *Graves*, the Second Circuit also noted that courts use the common law agency test "'only in situations that plausibly approximate an employment relationship.'" *Id.* (quoting *Graves*, 907 F.2d at 74). The *O'Connor* court explained that "[w]here no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because . . . 'compensation . . . is an essential condition to the existence of an employer-employee relationship.'" *Id.* at 115-16 (quoting *Graves*, 907 F.2d at 73) (other citations omitted). Because O'Connor did not receive remuneration such as a salary, wages, health insurance, vacation, or sick pay, the Second Circuit held O'Connor was not an "employee." *Id.* at 116.

Consistent with *Graves* and *O'Connor*, other circuits have held that a volunteer was not an "employee" when there was no showing of remuneration. *See, e.g. McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) (holding a medical student who did not receive remuneration did not

establish an employment relationship for purposes of Title I of the Americans with Disabilities Act (ADA)); *Llampallas v. Mini-Circuits, Lab, Inc.*,163 F.3d 1236, 1243-44 (11th Cir. 1998) (holding an officer-director who did not receive any compensation was not an "employee" within the meaning of Title VII).

In addition to the previously cited cases where there was no showing of remuneration such as a salary or wages, some circuits have not precluded a showing of remuneration in the absence of a salary or wages where a volunteer has received significant indirect benefits.  The Fourth Circuit's opinion in *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir. 1993), and the Second Circuit's opinion in *Pietras v. Board of Fire Commissioners of Farmingville Fire District*, 180 F.3d 468 (2d Cir. 1999), are illustrative in this regard.

The facts of *Haavistola* involved a Title VII action by a volunteer firefighter who did not receive a salary or wages, but instead received indirect job-related benefits.  6 F.3d at 221.  The Fourth Circuit acknowledged that "[c]ontrol loses some of its significance in the determination whether an individual is an employee in those situations in which compensation is not evident." *Id.* at 220.  Although recognizing that Haavistola did not receive direct compensation, the court noted that "[Haavistola] did not affiliate with the company without reward entirely," as she received a state-funded disability pension, survivors' benefits for dependents, scholarships for dependents upon disability or death, group life insurance, paramedic certification, tax-exemptions for unreimbursed travel expenses, reduced-rates on commemorative license plates, and benefits under the Federal Public Safety Officer's Benefits Act.  *Id.* at 221.

The Fourth Circuit reversed the district court's summary judgment ruling that Haavistola was not an "employee," and remanded the matter for a trier of fact's determination of whether Haavistola's receipt of such benefits constituted

"indirect but significant remuneration" supporting an employment relationship, or were "inconsequential incidents of an otherwise gratuitous relationship." *Id.* at 221-22.

In *Pietras*, the Second Circuit affirmed a bench trial's finding that a volunteer firefighter was a Title VII "employee" when the firefighter did not receive a salary or wages, but received significant indirect benefits, including a retirement pension, life insurance, death benefits, disability insurance, and limited medical benefits. 180 F.3d at 471, 473.

In sum, the threshold-remuneration line of cases teaches that: (1) remuneration may consist of direct remuneration, *i.e.*, salary or wages, or significant indirect benefits that are not incidental to the service performed, *i.e.*, job-related benefits; (2) if there is no showing of remuneration, courts will not proceed to the common law agency test; and (3) if there is remuneration supporting a plausible employment relationship, courts will proceed to the common law agency test.

D.

The Sixth and Ninth Circuits do not view remuneration as a dispositive factor in evaluating the overall employment relationship.

In *Bryson v. Middlefield Volunteer Fire Department, Inc.*, the Sixth Circuit declined to adopt *O'Connor's* holding that, to be a "hired party," a plaintiff must demonstrate a threshold showing of "significant remuneration." 656 F.3d 348, 354 (6th Cir. 2011). The *Bryson* court instead held that remuneration was not an independent antecedent requirement, but rather was only one nondispositive factor that should be assessed in conjunction with "all of the incidents of the relationship." *Id.* (citation omitted). The *Bryson* court remarked that "[t]he Supreme Court included the term 'hired party' in *Darden* only in a direct quote from its decision in *Reid*, and the *Reid* Court's use of 'hired party' was in the context of the 'work for hire' provision from the Copyright Act." *Id.* "Although

the [Supreme] Court did not define 'hired party' in *Reid*, it did define 'hiring party': 'By "hiring party," we mean to refer to the party who claims ownership of the copyright by virtue of the work for hire doctrine.'" *Id.* (quoting *Reid*, 490 U.S. at 739). The Sixth Circuit continued: "We doubt that the [Supreme] Court would define 'hiring party' as such while at the same time considering 'hired party' to carry much more substantive weight in requiring that it be an individual who received significant remuneration for his services." *Id.*

The *Bryson* court further explained that "the [Supreme] Court's instruction to apply the common law of agency is not limited to when the individual receives significant remuneration but rather 'when Congress has used the term "*employee*" without defining it.'" *Id.* (quoting *Reid*, 490 U.S. at 739-40) (emphasis in original). Therefore, the *Bryson* court considered remuneration as a factor, but followed the *Darden* Court's instruction that "'all of the incidents of the [putative employment] relationship must be assessed and weighed with no one factor being decisive.'" *Id.* (quoting *Darden*, 503 U.S. at 324) (other citations omitted).

In *Fichman v. Media Center*, the Ninth Circuit considered whether directors and independent producers of a nonprofit media company were "employees" under the ADA and the Age Discrimination in Employment Act (ADEA), and it similarly noted that remuneration was a nondispositive factor. 512 F.3d 1157, 1160 (9th Cir. 2008). The court concluded that directors were not "employees" under the director-employee test adopted in *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003).[3]

---

[3] In *Clackamas*, the Supreme Court addressed the issue of whether physicians who engaged in medical practice as shareholders and directors of a professional corporation should be counted as "employees" for purposes of the ADA. 538 U.S. at 442. The Court noted that the common law agency test factors were not directly applicable because the Court did not have to distinguish between independent contractors and employees. *Id.* at 445 n.5. The Court remarked, however, that the "common-law element of control is the principal guidepost that should be followed." *Id.* at 448. The Court then described six factors relevant to

No. 12-30274

**IV.**

After consideration of both approaches, we adopt the threshold-remuneration test, as we find it uniquely suited to assessing a plausible employment relationship within the volunteer context. In support, we conclude that *O'Connor* is persuasive, *i.e.*, that a volunteer is distinguishable from the employee-independent contractor situation because there is a prerequisite of a "hire" in the latter. *See O'Connor*, 126 F.3d at 115. This point is further borne out by the fact that a volunteer is generally not an "employee," and thus no "hire" has occurred since there is no receipt of remuneration supporting an employer-employee relationship. *See EEOC Compliance Manual* § 2-III(A)(1)(c) (2000), *available at* http://www.eeoc.gov/policy/docs/threshold.html ("Volunteers usually are not protected 'employees.'"); *see also O'Connor*, 126 F.3d at 115-16 ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist because although 'compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, . . . it is an essential condition to the existence of an employer-employee relationship.'" (quoting *Graves*, 907 F.2d at 73) (other citations omitted)).

Like the majority of our sister circuits, we will "turn to common-law principles to analyze the character of an economic relationship 'only in situations that plausibly approximate an employment relationship.'" *Id.* at 115 (quoting *Graves*, 907 F.2d at 74); *see also EEOC Compliance Manual* § 2-III(A)(1)(c) (noting that a volunteer may be considered an employee if, "as a result of volunteer service, s/he receives benefits such as a pension, group life insurance, workers' compensation, and access to professional certification . . . .") (citing

determining whether a director is an employee and explained that "the answer to whether a shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no factor being decisive.'" *Id.* at 451 (citation omitted).

13

No. 12-30274

*Pietras*, 180 F.3d at 473). Lastly, we conclude that it is within the province of Congress, and not this court, to provide a remedy under Title VII for plaintiffs in Juino's position. *O'Connor*, 126 F.3d at 119 ("[I]t is for Congress, if it should choose to do so, and not this court, to provide a remedy under . . . Title VII . . . for plaintiffs in O'Connor's position.").

## V.

Turning to the case at hand, Juino contends that she is an "employee" under Title VII because she received the following benefits while working at District 5: $2.00 per fire/emergency call; a life insurance policy; a full firefighter's uniform and badge; firefighting and emergency response gear; and firefighting and emergency first-response training. She also avers that District 5 had a paramilitary organizational structure with the authority to supervise, hire, fire, and set applicable rules and regulations of work.

It is undisputed that Juino did not receive a salary and that she responded to 39 calls, which resulted in compensation of $78.00.[4] She also received a life insurance policy, a uniform and badge, and emergency/first responders' training. Juino's benefits are unlike the significant indirect benefits received by the volunteer firefighters in *Haavistola* and *Pietras*. We thus conclude, as a matter of law, that Juino was not an "employee" for purposes of Title VII because she has failed to make a threshold showing of remuneration. Juino's benefits are purely incidental to her volunteer service with District 5. *See United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004) ("[R]emuneration need not be a salary, but must consist of 'substantial benefits not merely incidental to the

---

[4] Juino claims that she received this reimbursement. District 5 contends that, because Juino was a probationary member of District 5, Juino did not receive this reimbursement during her time as a volunteer firefighter. For purposes of summary judgment, this court views this fact in the light most favorable to Juino. *See Dameware Dev., L.L.C.,* 688 F.3d at 206-07.

14

No. 12-30274

activity performed.'") (internal and other citation omitted). On the record before us, we hold that Juino is not an "employee" within the meaning of Title VII.

## VI.

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Juino's Title VII claim with prejudice.