# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40239

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2015

Lyle W. Cayce
Clerk

SEAN KELLY, Next Friend of C.K., Minor; SHANNON KELLY, Next friend of C.K., Minor,

> Plaintiffs–Appellants

v.

ALLEN INDEPENDENT SCHOOL DISTRICT,

> Defendant–Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:12-CV-756

Before PRADO, ELROD, and HAYNES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:*

This is a Title IX action brought by the parents of C.K., a minor claiming he was sexually harassed by another student, against the Allen Independent School District (Allen ISD), where C.K. attended middle school. The district court granted summary judgment for Allen ISD, concluding that Allen ISD did not have actual knowledge of C.K.'s harassment; that any harassment C.K.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40239

experienced was not based on his sex; and that Allen ISD was not deliberately indifferent to C.K.'s harassment. We AFFIRM.

## I. BACKGROUND

The Kellys allege that their son, C.K., was subject to sex-based harassment at Curtis Middle School during the 2010–2011 school year.

In October 2009, Mr. Kelly sent an email to Allen ISD's Board of Trustees and Superintendent to express concern about a student who would soon be re-entering an Allen ISD school. That student, B.H., allegedly sexually assaulted a minor female in the spring of that year.[1] Although Allen ISD did not disclose this information to Mr. Kelly, the record shows that Allen ISD disciplined B.H. at the time of the spring incident as appropriate under its Student Code of Conduct: it assigned B.H. to a disciplinary placement at its Disciplinary Alternative Education Program (DAEP), the Dillard Center. At the end of B.H.'s disciplinary placement, he returned to an Allen ISD elementary school and then to Curtis Middle School the following year. Curtis Middle School officials had periodic meetings to review and report on B.H.'s progress as required by his special-education status.

Both C.K. and B.H. were students at Curtis Middle School during the 2010–2011 school year. On December 9, 2010, C.K. reported to Assistant Principal Robert Puster that B.H. had targeted him. He stated that B.H. had taken his glasses and made him chase B.H. for them. Then, he stated that "a

---

[1] Mr. Kelly demanded that B.H. be moved to another school; that Allen ISD officials provide assurances that other children would be protected from B.H.; and that he be given information about how Allen ISD intended to handle B.H.'s on-campus supervision. Lois Lindsey, a school-board member, replied with a long email, stressing that student safety "is a top priority and will be until a solution is reached." Allen ISD's Public Information Officer responded that he would circulate the email, but he could not disclose any information about the matter.

few weeks ago several boys started 'T-bagging everybody.'"[2] By this he meant that the boys—B.H. and another child, T.B.—hung their crotches in students' faces and humped them. There is no evidence that B.H. and T.B. removed their clothing, or that there was any contact between their genitals and other students' bodies. C.K. also reported that B.H. had teased C.K. on many occasions, taunting him by saying things like "I love you" and "are you my boyfriend" and by taking his things. Puster promised to take action.

Puster and Principal Becky Kennedy investigated the allegations: they immediately placed B.H. and T.B. in In-School Suspension (ISS) pending the results of the investigation; they took reports from over fifty students; and on December 13 they recommended placing B.H. and T.B. in the Dillard Center DAEP. Curtis Middle School teachers and administrators also took steps to help C.K. make friends at school, including inviting him to join the Fellowship for Christian Athletes and the Social Skills Group.

The student reports corroborated C.K.'s allegation that B.H. and T.B. hung their crotches in students' faces. They revealed that these incidents took place while the students were changing for gym class or waiting for the teacher to call roll, and they uniformly suggested that B.H. and T.B. only engaged in t-bagging while Curtis Middle School teachers were not looking.

Just days before the December t-bagging incident, the committee in charge of monitoring B.H.'s special-education needs reported that B.H. was

---

[2] The students appear to use the word "t-bagging" in reference to a lewd act that involves contact between a man's scrotum and another person's face. As Assistant Principal Puster's testimony suggests, it does not appear that any unclothed sexual touching took place: "When I sought clarification of what the term meant, C.K. explained that B.H. and T.B. 'would hang their crotch in people's faces or hump them.' However, C.K. did not report and I found no evidence that there had been any removal of clothing by either B.H. or T.B. when they 'T-bagged' him. Based upon information provided to me by C.K., I understood that the 'T-bagging' acts were mimicry of sexual acts, but did not involve sexual touching."

No. 14-40239

having trouble with his grades and attention. The committee did not make any report or findings as to potential sexual misconduct.

C.K. reported two additional bullying incidents not related to B.H. First, on October 8, 2010, C.K. submitted a Bullying Incident Report Form stating that E.C., another student, raised a middle finger at him. Assistant Principal Joe Gray investigated the incident and determined it was not bullying, though he spoke with both boys to avoid another incident in the future.

Second, on December 13, Mrs. Kelly emailed Kennedy, C.K.'s teachers, and guidance counselor Jolene Johnson to report that while C.K. was waiting for her to pick him up from school, K.M., a girl who was friends with B.H. or T.B., pulled on the back of C.K.'s jacket and asked why C.K. was causing trouble for her friend. Puster investigated the incident: he immediately assigned K.M. to ISS, where she remained for the rest of the semester. He also recommended a DAEP placement.

Throughout the school year, the Kellys vociferously registered their disagreement with how Curtis Middle School students treated C.K. and with how Allen ISD officials responded to the Kellys' complaints. On March 4, 2011, the Kellys withdrew C.K. from Allen ISD and transferred him to McKinney ISD. At that time, B.H., T.B., and K.M. were still in DAEP placement.

On December 5, 2012, the Kellys filed this suit in federal district court on behalf of their son. Allen ISD successfully moved for summary judgment in October 2013. This appeal follows.

## II. DISCUSSION

This Court has jurisdiction to review a district court's final judgment pursuant to 28 U.S.C. § 1291. The district court had federal-question jurisdiction over this Title IX action under 28 U.S.C. § 1331.

We review de novo a district court's grant of summary judgment, viewing "all facts and evidence in the light most favorable to the non-moving party."

No. 14-40239

*Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). We apply the same standard as the district court in the first instance. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343 (internal quotation marks omitted).

## A.     Elements of a Title IX Action

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). The Supreme Court has construed Title IX to provide a private right of action for individuals to sue educational institutions that receive federal funds. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 65, 76 (1992).

A plaintiff suing a school district for student-on-student harassment under Title IX must show that

> the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment.

5

*Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration omitted) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

The district court adopted the magistrate judge's findings that (1) Allen ISD had no knowledge of the harassment; (2) C.K.'s harassers were under Allen ISD's control; (3) C.K.'s harassment was not based on his sex; (4) the question of the severity of the harassment was properly left for a jury; and (5) Allen ISD was not deliberately indifferent to the harassment. Because the Kellys could not show genuine disputes of material fact as to three key elements of their Title IX claim, the district court granted summary judgment for Allen ISD. The Kellys appeal the court's first, third, and fifth determinations. Because we agree with the district court that Allen ISD lacked actual knowledge of the alleged harassment as a matter of law, we need not reach the remaining issues.

## B.    Actual Knowledge

For a school district to face Title IX liability, it must have had actual knowledge of harassment; constructive notice will not suffice. *Davis*, 526 U.S. at 640–43 (construing the statute and rejecting an agency theory of liability because "the recipient itself must exclude persons from participation in, . . . deny persons the benefit of, or . . . subject persons to discrimination under its programs or activities in order to be liable under Title IX" (alterations and internal quotation marks omitted)). In other words, for liability to attach, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference, *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 658 (5th Cir.

No. 14-40239

1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted).[3]

The undisputed facts in the record lead to the conclusion that Allen ISD had no knowledge of facts that would permit the inference that C.K. faced a substantial risk of serious harassment, and that no Allen ISD official in fact drew such an inference.

First, as regards B.H.: The t-bagging incident was first reported on December 9, 2010. C.K. and others told Allen ISD faculty that the incident took place in physical-education class, and student statements uniformly confirm that everything happened "whenever the teachers weren't looking." Indeed, Appellants themselves confirm that the incidents typically took place when the children were unsupervised. Nothing in the record indicates that any Curtis Middle School official was aware of the problem prior to C.K.'s December 9 incident report—after which Allen ISD officials took prompt investigative and remedial action. Both Kennedy and Puster investigated C.K.'s allegations, and Curtis Middle School officials placed B.H. and T.B. in ISS, then recommended they be transferred to the Dillard Center DAEP. Both students remained at the Dillard Center until after C.K. left Curtis Middle School. Allen ISD

---

[3] The Kellys argue that since Allen ISD had substantial control over B.H. when the incident happened, the district must also have had actual knowledge of the harassment. But this argument is based on a misunderstanding of the law: these two elements of a Title IX action are distinct. The law imposes a relatively low threshold for proving a school exercised substantial control over a student. Liability can attach when, as here "the misconduct occurs during school hours and on school grounds." *Davis*, 526 U.S. at 646. In such cases, "the misconduct is taking place 'under' an 'operation' of the funding recipient." *Id.* By contrast, plaintiffs seeking to prove actual knowledge must clear a high bar. "[T]he district can escape liability if it can show 'that it did not know of the underlying facts indicating a sufficiently substantial danger and that it was therefore unaware of a danger, or that it knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was substantial or nonexistent.'" *Rosa H.*, 106 F.3d at 659 (alterations omitted) (quoting *Farmer* 511 U.S. at 843–44 (1994)).

7

responded with similar speed and determination to C.K.'s complaint regarding K.M.

It is true that B.H. had previously assaulted a female minor, and that Mr. Kelly emailed the Curtis Middle School Board of Trustees to indicate his concern with B.H.'s presence in C.K.'s school. At B.H.'s final review before the t-bagging incident, which took place on December 6, Curtis Middle School administrators noted that B.H. was having trouble with his grades and attention. There was no indication that B.H. was acting out sexually or bullying his classmates. This falls far short of Title IX's stringent actual-knowledge standard.

Second, as regards the remaining students: C.K.'s only prior bullying report was against E.C., the student who raised his middle finger at C.K. There is no allegation that E.C. bullied C.K. at all before or after that first incident. The same is true of K.M., the student who pulled on the back of C.K.'s jacket; she and C.K. had no further interaction. Taken together in the light most favorable to the Kellys, these reported incidents do not permit the inference that the district knew that C.K. was at risk of harassment. Therefore, we conclude that Allen ISD did not have "actual knowledge of the harassment," *Sanches*, 647 F.3d at 165.

Because actual knowledge is a necessary element of a prima facie Title IX claim, we AFFIRM the district court's grant of summary judgment in favor of Allen ISD.