**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**March 26, 2019**

**FOR THE TENTH CIRCUIT**
_____

KARNA SACCHI,

      Plaintiff - Appellant,

v.

IHC HEALTH SERVICES, INC.; JOY
SINGH,

      Defendants - Appellees.

No. 18-4027

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-01107-BSJ)**
_____

Christian A. Kesselring, Wasatch Law Group, PLLC, Salt Lake City, Utah, for Plaintiff - Appellant.

Chad R. Derum (Christopher M. Glauser, with him on the brief), Manning Curtis Bradshaw & Bednar PLLC, Salt Lake City, Utah, for Defendant - Appellee IHC Health Services, Inc.

_____

Before **PHILLIPS**, **KELLY**, and **CARSON**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Plaintiff-Appellant Karna Sacchi obtained an unpaid internship with Defendant-

Appellee IHC Health Services, Inc. (the "Hospital"), but her internship was terminated by

Defendant-Appellee Joy Singh before it was scheduled to finish. 1 Aplt. App. 17, 21, 23–24. Ms. Sacchi then filed a complaint alleging: (1) associational discrimination and retaliation under the Americans with Disabilities Act (ADA), (2) sex and religious discrimination under Title VII of the Civil Rights Act, (3) age discrimination under the Age Discrimination in Employment Act (ADEA), (4) breach of contract, and (5) defamation against Ms. Singh. Id. at 13–14. The district court dismissed Ms. Sacchi's federal claims pursuant to Fed. R. Civ. P. 12(b)(6) because it concluded that she was not an employee and therefore not protected under the antidiscrimination statutes. 1 Aplt. App. at 43. The district court also declined to exercise supplemental jurisdiction over her non-federal claims and dismissed them without prejudice. Id.

On appeal, Ms. Sacchi asks the court to hold that, in an internship setting, access to professional certification, a path to employment, or both can constitute indirect, significant job-related benefits and thereby satisfy the "threshold-remuneration" test if those benefits are substantial and not incident to the internship. Aplt. Br. at 24–25. In the alternative, Ms. Sacchi asks the court to hold that most unpaid interns are "employees" under federal antidiscrimination statutes. Id. at 25. On the facts alleged in Ms. Sacchi's complaint, we conclude that the benefits claimed are too attenuated and speculative to constitute sufficient remuneration for purposes of this circuit's threshold-remuneration test. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

2

## Background

Ms. Sacchi's complaint alleged that she was pursuing a master's degree at Mills College in early childhood education with an emphasis in child life in hospitals, and she sought to become a certified child life specialist. 1 Aplt. App. 16. The Child Life Council requires that applicants for certification complete 480 hours in an internship with an approved institution. Id. at 16. To that end, Ms. Sacchi began an internship with the Hospital, and her internship was originally scheduled to last from August 26, 2015, to December 15, 2015. Id. at 17–18. On November 3, however, Ms. Singh, the Director of Child Life at the Hospital, terminated the internship. Id. at 24. The complaint further alleged that Ms. Singh and the Hospital knew that Ms. Sacchi's father had a disability, that Ms. Sacchi was a single mother and not a member of the LDS church, and that Ms. Sacchi was over 40 years of age. Id. at 5, 22, 26, 28.

Relevant to this appeal, Ms. Sacchi received no direct payment or other benefits for her work as an intern. Ms. Sacchi alleged, however, that the internship would provide other benefits; namely, it would allow her to satisfy the internship requirement to be certified as a child life specialist, and that it would provide a pathway to employment because "[t]he great majority of newly certified child life specialists obtain paid employment in the field shortly after certification — often with the institutions where they completed their internships." Id. at 16, 21, 26. To be certified as a child life specialist Ms. Sacchi was required to have satisfied three requirements: (1) complete an educational component, (2) complete 480 hours of clinical training, and (3) pass a certification exam. See id. at 16. The Hospital's internship program is designed to

satisfy the clinical experience requirement, and the program is accredited and recognized by the Child Life Council.  Id.  Once Ms. Sacchi completed her internship she would have been qualified to take a certification exam, which most people pass on the first attempt.  Id.  Given Ms. Sacchi's previous academic performance, she maintains it is likely that she would have passed the exam.  Id. at 16–17.

The district court dismissed Ms. Sacchi's federal claims because it concluded that Ms. Sacchi had not alleged facts sufficient to qualify as an employee for the purposes of the ADA, ADEA, and Title VII and thus did not fall within those statutes' protections.  Id. at 43.

## Discussion

We review a district court's dismissal of a complaint for failure to state a claim de novo.  Young v. Davis, 554 F.3d 1254, 1256 (10th Cir. 2009).  We accept all facts alleged in a well-pleaded complaint as true, and we view the facts in the light most favorable to Ms. Sacchi.  Potts v. Ctr. for Excellence in Higher Educ., Inc., 908 F.3d 610, 613 (10th Cir. 2018).  We also review de novo the legal conclusion whether a person is within the class of persons protected by the statutes under which she claims relief.  See id.

### A. Whether Ms. Sacchi Satisfies the Threshold-Remuneration Test

We review whether the facts Ms. Sacchi alleged in her complaint established that she was plausibly an "employee" within the meaning of Title VII, the ADA, and the ADEA.  Viewed in the light most favorable to her, the facts she alleged were insufficient

4

to establish a plausible employment relationship under Title VII, the ADA, and the ADEA.  For this reason, we conclude that the district court properly dismissed Ms. Sacchi's complaint under Fed. R. Civ. P. 12(b)(6).

In each of the Acts, "employee" is defined as "an individual employed by an(y) employer."  29 U.S.C. § 630(f) (ADEA definition); 42 U.S.C. §§ 2000e(f) (Title VII definition); 42 U.S.C. § 12111(4) (ADA definition).[1]  Typically, this circuit relies on a common law test that invokes agency principles to determine whether a person is an employee for the purposes of the employment discrimination statutes.  See, e.g., Lambertsen v. Utah Dep't of Corr., 79 F.3d 1024, 1028 & n.1 (10th Cir. 1996).  When a person is unpaid, however, we inquire whether the person receives sufficient remuneration to proceed to the common law analysis.  See McGuinness v. Univ. of N.M. Sch. of Med., 170 F.3d 974, 979 (10th Cir. 1998).  Accordingly, this test is known as the "threshold-remuneration test."  Johnston v. Espinoza-Gonzalez, No. 16-cv-00308-CMA-KLM, 2016 WL 7188524, at *4 (D. Colo. Dec. 12, 2016).  In McGuinness, we explained that "[u]nless a student receives remuneration for the work he performs, he is not considered an employee."  170 F.3d at 979.  We concluded in McGuinness that even though the student "completed federal employment applications, took a federal oath of office, and was covered by the New Mexico Tort Claims Act," he was not "an employee

---

[1]  The Supreme Court has explained that when Congress uses the term "employee" without defining it precisely, courts should presume Congress contemplated "the conventional master-servant relationship as understood by common-law agency doctrine."  Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322–23 (1992) (quoting Comty. for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989)).  Thus, the three definitions should be interpreted identically.

of a state-run medical school." Id. Thus, "[a]n organization, such as a university, may confer certain benefits on an individual and exercise a modicum of control over him without establishing a master-servant relationship." Id.

Several other circuits apply the threshold-remuneration test. See generally Juino v. Livingston Par. Fire Dist. No. 5, 717 F.3d 431 (5th Cir. 2013); York v. Assoc. of the Bar of the City of N.Y., 286 F.3d 122 (2d Cir. 2002); Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236 (11th Cir. 1998); Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211 (4th Cir. 1993); Graves v. Women's Prof'l Rodeo Ass'n, 907 F.2d 71 (8th Cir. 1990). In general, to satisfy the test, the plaintiff must receive direct remuneration or indirect benefits that are substantial or significant and not incidentally related to advancing the purpose of the putative employer. Juino, 717 F.3d at 436–37. In Juino, the plaintiff, a volunteer firefighter, received $2.00 per fire/emergency call, life insurance, a uniform and badge, and firefighting and emergency response gear and training. Id. at 439. The Fifth Circuit concluded that these benefits were merely incidental to volunteer service. Id. at 439–40.

In contrast, the Fourth Circuit held that whether benefits are indirect but significant remuneration or merely incidental was for the trier of fact to resolve where the

6

plaintiff firefighter received numerous benefits,[2] including an opportunity to obtain certification as an emergency medical technician.[3] <u>Haavistola</u>, 6 F.3d at 221 n.3.

We conclude that Ms. Sacchi's intern relationship with the Hospital fails to satisfy the threshold-remuneration test as a matter of law for two reasons. First, the claimed benefits were not provided directly by the hospital, and they did not resemble traditional employment benefits like a pension or insurance. Second, the claimed benefits were attenuated: they would only be realized if subsequent events occurred independently of the internship relationship, thereby rendering them too insubstantial or insignificant.

Although an internship was required for Ms. Sacchi to sit for a professional exam, she still had to pass the exam to receive her child life certification. <u>See</u> 1 Aplt. App. 16. For her to have obtained a position thereafter, she still had to find an open position, apply for that position, and then be selected over all other applicants in what Ms. Sacchi noted is a competitive field. Aplee. Br. at 15; 1 Aplt. App. 25. Merely because others have obtained positions after unpaid internships does not constitute a substantial or significant

---

[2] They included (1) a state-funded disability pension, (2) survivors' benefits for dependents, (3) scholarships for dependents upon disability or death, (4) a state flag to family upon death in the line of duty, (5) benefits under the Federal Public Safety Officers' Benefits Act when on duty, (6) group life insurance, (7) tuition reimbursement for courses in emergency medical and fire service techniques, (8) coverage under Maryland's Workers Compensation Act, (9) tax exemptions for unreimbursed travel expenses, (10) the ability to purchase a special registration plate at lower cost, and (11) access to a method by which one may obtain a certification as a paramedic. <u>Haavistola</u>, 6 F.3d at 221.

[3] Similarly, Ms. Sacchi argues that a child life internship presents the only option for obtaining a child life certification. Aplt. Br. at 21.

indirect benefit.[4] Thus, even viewing the facts in the light most favorable to Ms. Sacchi, the claimed benefits are too attenuated and conditional to constitute substantial indirect benefits.

Although Haavistola recognized that an internship may be the "most practical approach" to establishing eligibility for a professional certification, the plaintiff there also pointed to many other benefits, including benefits under the Federal Public Safety Officers' Benefits Act when on duty and coverage under Maryland's Workers Compensation Act, both of which resemble more traditional employment benefits. 6 F.3d at 221 & n.3. By contrast, the benefits that Ms. Sacchi alleged are speculative, follow-on benefits that do not come into existence immediately as a result of the internship. Finally, Ms. Sacchi has cited no cases, nor could we find any, where only a professional certification and pathway to employment satisfied the threshold-remuneration requirement.

We also decline the invitation to conclude that all interns are protected by Title VII, the ADA, and the ADEA. Aplt. Br. at 24–27. Even if a laudable goal, this is a task for Congress. Moreover, we are not inclined to establish a broader rule than necessary to decide the case before us. See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.,

---

[4] The same could be said for the general benefits students receive through unpaid internships including "practical experience, exposure to a career field, networking, and the esteem of potential employers." See Aplt. Br. at 1–2.

616 F.3d 1086, 1094 (10th Cir. 2010) ("Judicial restraint, after all, usually means answering only the questions we must, not those we can.").[5]

**B. The Hospital's Motion to File Portion of the Record Under Seal**

One procedural issue remains. On appeal, the Hospital provided a copy of the contract between it and Ms. Sacchi's school (Mills College) in a sealed supplemental appendix that had also been sealed during the district court proceedings under a standard protective order. See 2 Aplee. Supp. App. 147–54; Aplee. First Suppl. Mot. to Seal Suppl. App., Ex. 1. The Hospital filed a motion to seal the appendix as required by Tenth Circuit Rule 25.6(A). See Aplee. Mot. to Seal Suppl. App. The Hospital also filed two supplemental motions, urging that the contract should remain under seal because it contained a confidentiality clause and involved a non-party. Aplee. First Suppl. Mot. to Seal Suppl. App. at 2; Aplee. Second Suppl. Mot. to Seal Suppl. App. at 2–3.

We will not grant a motion to seal unless the moving party overcomes a presumption in favor of access to judicial records by "articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our

---

[5] We also asked the parties for supplemental briefs addressing "[w]hether 42 U.S.C. § 2000e–2(d), entitled 'Training programs,' contemplates the type of internship at issue in this case." We have discretion to reach issues sua sponte in limited circumstances. See Planned Parenthood of Kan. & Mid-Mo. v. Moser, 747 F.3d 814, 837 (10th Cir. 2014), abrogated on other grounds by Safe Streets All. v. Hickenlooper, 859 F.3d 865 (10th Cir. 2017). This theory was never raised at the district court, and it was not raised on appeal until we asked for supplemental briefing. We therefore agree with the Hospital that the principles motivating the application of plain error in similar circumstances counsel that we should not exercise our discretion to reach this issue. See Aplee. Supp. Br. at 8–10; Somerlott v. Cherokee Nation Distrib. Inc., 686 F.3d 1144, 1150–52 (10th Cir. 2012).

decision-making process." Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1135–36 (10th Cir. 2011) (quoting Helm v. Kansas, 656 F.3d 1277, 1292 (10th Cir. 2011)). The Hospital's reasons for sealing the contract (the confidentiality clause and the involvement of a non-party) do not overcome this burden. The interest in preserving the confidentiality of the contract does not necessarily constitute a sufficiently substantial justification. See Colony Ins. Co. v. Burke, 698 F.3d 1222, 1241–42 (10th Cir. 2012). Although the Hospital has indicated that the contract contains a confidentiality clause, it has failed to "submit[] any specific argument or facts indicating why the confidentiality of [the contract] outweighs the presumption of public access." Id. at 1242. As for the argument that the contract should be sealed because it involves a non-party, the Hospital cites no authority explaining why the inclusion of a non-party constitutes a real or substantial interest that justifies withholding the contract from the public record. The Hospital also notes that the contract had been sealed by the district court's standard protective order, but we are not bound by a district court's decision to seal a document. Williams v. FedEx Corp. Servs., 849 F.3d 889, 905 (10th Cir. 2017). Because the Hospital has not satisfied its "heavy burden," Eugene S., 663 F.3d at 1136, the motion is denied.

AFFIRMED.