# United States Court of Appeals for the Fifth Circuit

—————————

No. 22-51041
Summary Calendar

—————————

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2023

Lyle W. Cayce
Clerk

Melanie Mason; Dolores Mason,

*Plaintiffs—Appellees*,

*versus*

Helping Our Seniors, L.L.C.,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-368

———————————————————————

Before Davis, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Plaintiffs-Appellees, Melanie Mason and her mother, Dolores Mason, sued Defendant-Appellant, Helping Our Seniors, L.L.C., for retaliatory discharge under Title VII of the Civil Rights Act of 1964. After a bench trial, the district court[1] granted judgment in favor of Plaintiffs, awarding money damages for lost wages, compensatory mental anguish damages, and punitive

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] The parties consented to proceed before the magistrate judge.

No. 22-51041

damages, as well as authorizing an award of reasonable attorney's fees. Defendant appeals, arguing that the district court erred on numerous grounds. As set forth below, we AFFIRM.

## I. BACKGROUND

Defendant is in the business of providing in-home, non-medical care and companion services to senior citizens in the San Antonio metropolitan area. The company is owned by Martha and Patrick Cave and operated by Martha, who runs the business out of the couple's home. Plaintiffs worked for Defendant as both caregivers and office employees over a period of several years.

Melanie testified that she repeatedly complained to Martha that Patrick created a sexually hostile work environment by loudly watching pornography on Sunday mornings during Melanie's office shift. Melanie further testified that she was the only other person present in the home office on Sunday mornings and that she felt extremely uncomfortable and offended by Patrick's extracurricular activity. Melanie testified that she complained to Martha in January 2018, March 2018, and finally on April 6, 2018, the day before she was fired. Melanie's testimony that she complained about sexual harassment was corroborated by her mother and Victor Blalock, the company's financial administrator.

The district court found that Melanie complained to her employer regarding conduct that could constitute sexual harassment in the workplace and that these complaints were based on her good-faith reasonable belief that Patrick's conduct violated federal law. The district court further found that Melanie had engaged in protected activity under Title VII when she called the Equal Employment Opportunity Commission ("EEOC") on the afternoon of April 6, 2018, the day before she was terminated, to inquire about filing a charge of sexual harassment against Defendant. The court

No. 22-51041

additionally found that Dolores had standing to sue because she was an "aggrieved person" under Title VII, due to her close association with her daughter Melanie.

After being terminated, Plaintiffs filed suit alleging that they were discharged from employment in retaliation for the complaints Melanie made to Martha and the EEOC regarding sexual harassment in the workplace. After conducting a bench trial, the district court rendered judgment in favor of Plaintiffs, awarding Melanie $2,080 in lost wages, $10,000 in compensatory mental anguish damages, and $5,000 in punitive damages, and awarding Dolores $51,802 in lost wages, $10,000 in compensatory mental anguish damages, and $5,000 in punitive damages. The district court also authorized the award of reasonable attorney's fees. Defendant timely filed a notice of appeal.

## II. DISCUSSION

"When we review a district court's decision following a bench trial, we apply a standard of clear error to the court's findings of fact and review legal issues *de novo.*"[2]

Defendant first argues that it was not subject to Title VII because it did not employ the requisite number of employees. An employer is subject to Title VII if it employs "fifteen or more employees for each working day in each of twenty of more calendar weeks in the current or preceding calendar year."[3] Defendant contends that it employed fewer than ten employees in its office and that the approximately fifty or more caregivers who provided

---

[2] *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 232-33 (5th Cir. 2022).

[3] 42 U.S.C. § 2000(b).

care to its clients were not employees, but independent contractors. We disagree.

As the district court noted, this Court applies the hybrid "economic realities/common law control test" to determine whether an individual is an "employee" under Title VII.[4] We have explained that "[t]he economic-realities portion of the test asks whether putative employees, as a matter of economic reality, are dependent upon the business to which they render service."[5] We have further stated that "[t]he common law control portion of the test, which courts should emphasize over the economic realities portion, assesses the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed."[6] The focus is "on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule."[7]

The evidence presented at trial supports the district court's finding that the caregivers were employees under the common-law-control factors. Specifically, Defendant hired and fired caregivers and set their work schedules. Although, as Defendant argues, Defendant did not directly supervise its caregivers while they were providing in-home services to its clients, Defendant exercised substantial control over the details and means by which the work was performed. New caregivers had to undergo

---

[4] *See Diggs v. Harris Hosp.-Methodist, Inc.,* 847 F.2d 270, 271-73 (5th Cir. 1988) (adopting and summarizing the "economic realities/common law control test" (citing *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)).

[5] *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 434-35 (5th Cir. 2013) (internal quotation marks and citation omitted).

[6] *Id.* (setting forth eleven factors) (internal quotation marks and citations omitted).

[7] *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993).

orientation at the time of hiring to learn Defendant's policies, were quizzed on them, and had to initial their assent to them. The policies proscribed certain behaviors during caregiver-client interactions, dictated a dress code, and imposed rules about hours, scheduling, and pay days. Caregivers were also reviewed on an annual basis regarding their work performance, and they were subject to reprimand for failure to adhere to company policy or for performance issues. Finally, although caregivers had discretion to turn down a specific caregiving assignment, if they turned down several assignments, the company would no longer contact them. Based on the foregoing, the district court did not clearly err in finding that the caregivers were employees under the common-law-control factors.

Plaintiffs' evidence also supports the district court's finding that the caregivers were employees under the economic-realities factors. Specifically, the evidence showed that the work of the caregivers was not performed by specialists and did not require any special skills typical of those provided by independent contractors. There was no educational requirement, although the company preferred that a caregiver have a high school or general equivalency degree. Prior experience was also not required. Moreover, Defendant paid its caregivers on an hourly basis and reimbursed them for expenses such as mileage and parking. Caregivers did not provide any of their own supplies for their work and were not required to maintain liability insurance for the care they provided.

Defendant argues, however, that certain factors weighed against a finding of employee status. Specifically, Defendant points out that it did not provide caregivers with annual leave or retirement benefits, nor did it pay for their Social Security taxes. Additionally, each caregiver signed an "independent contractor" agreement. As Plaintiffs argue, however, the label on an agreement does not dictate whether an individual is an employee or independent contractor, and is "dispositive only to the degree that the label

No. 22-51041

mirrors the economic reality of the relationship."[8] The focus is whether the "totality the circumstances" indicates that a caregiver was an employee.[9] In light of the evidence presented at trial, the district court did not err in determining that the caregivers were employees of Defendant and that, consequently, Defendant was subject to Title VII because it employed the requisite number of employees during the relevant time period.

Defendant additionally argues that the district court erred in finding that Melanie was terminated for engaging in "protected activity" under Title VII. An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice by [Title VII]" or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]."[10] As the district court determined, Melanie testified that she spoke to Martha about Patrick's behavior three times. Dolores corroborated Melanie's testimony, and Blalock also confirmed that Melanie complained of sexual harassment. The evidence also established that Plaintiffs were fired the day after Melanie called the EEOC to inquire about filing a charge of sexual harassment against Defendant. Although Martha denied that she was ever approached by Melanie or Dolores, and that she fired Plaintiffs because of "disruptive behavior," the district court simply did not find her testimony credible. As we have noted, "[f]actual findings made during a bench trial deserve great deference," and we grant "even greater deference to the trial

---

[8] *See Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981).

[9] *See id.* (rejecting argument that putative employee's discretion to choose job assignments, pay structure, and work patterns "counterbalance[d] the strong indicia of employee status" because "[t]he totality of the circumstances" showed that he "was not an independent businessman in any meaningful sense").

[10] 42 U.S.C. § 2000e-3(a).

court's findings when they are based on determinations of credibility."[11] Based on the foregoing, the district court did not err in determining that Plaintiffs were terminated from employment for Melanie's "protected activity" under Title VII.

Finally, Defendant argues that that the evidence at trial was insufficient to support the district court's award of $10,000.00 in compensatory mental anguish damages and $5,000.00 in punitive damages each to Melanie and Dolores. We review the district court's award of mental anguish damages under Title VII for abuse of discretion.[12] In light of Melanie and Dolores's specific testimony detailing the depression and anxiety they suffered following their terminations, the district court did not abuse its discretion in awarding each $10,000 in mental anguish damages.[13] Furthermore, Defendant's challenge to the district court's punitive damages award has no merit. "A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with malice or with reckless indifference to the federal protected rights of an aggrieved individual."[14] The focus is on "the employer's knowledge that it may be acting in violation of federal law."[15] Martha testified that she knew retaliation against an employee for complaining about sexual harassment or making a complaint to the EEOC violated federal law. Although Martha contended that she did not fire

---

[11] *Hess Corp.*, 26 F.4th at 233 (internal quotation marks and citations omitted).

[12] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (5th Cir. 1998).

[13] *See id.* (finding no abuse of discretion in $5,000 mental anguish award that was supported only by plaintiff's testimony of "anxiety, sleeplessness, stress, marital hardship and loss of self-esteem").

[14] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 439 (5th Cir. 2022) (internal quotation marks and citation omitted).

[15] *Id.* (internal quotation marks and citation omitted).

No. 22-51041

Plaintiffs in retaliation, but instead based on their "disruptive behavior," the district court did not find her testimony credible. As stated above, the district court's credibility determinations are entitled to great deference. Based on the foregoing, punitive damages were warranted.

## III.

For these reasons, and the reasons set forth by the district court in its thorough and well-reasoned opinion, we AFFIRM.