FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HARRY S. JOHNSON, an individual,

     Plaintiff - Appellant/Cross-
     Appellee,

v.

MICHAEL HEATH, an individual;
DAWN HEATH, an individual,

     Defendants - Appellees/Cross-
     Appellants.

Nos. 20-4095 & 20-4103

_____

**Appeals from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CV-00416-RJS)**
_____

Kirk C. Lusty, Salt Lake City, Utah, for Plaintiff-Appellant/Cross-Appellee

James W. Jensen, Jensen Law Office, Cedar City, Utah, and Steven W. Call, Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for Defendants-Appellees/Cross-Appellants

_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

This case arises from a business deal gone sideways. Defendants Michael and

Dawn Heath sold Plaintiff Harry Johnson a gasoline and automobile-service station

in Wells, Nevada. But soon after the sale, Plaintiff allegedly discovered that the property had material, undisclosed defects and that Defendants had artificially inflated the business's profits by scamming customers over the years. So Plaintiff sued them.

Plaintiff asserted many state-law claims against both Defendants and a claim against Defendant Michael Heath under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The district court dismissed Plaintiff's RICO claim for failure to state a claim upon which relief can be granted and declined to exercise supplemental jurisdiction over the remaining state claims. Plaintiff appeals.

Our task is not to determine whether Defendants acted honorably or within the bounds of the law generally; we must decide only whether Defendants' actions as alleged plausibly violated the federal RICO statute. Because we conclude they did not, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm. We also affirm the district court's denial of Defendants' motion for attorney's fees.[1]

I.

Defendants first operated a Chevron-branded gas station in Elko, Nevada in 2000. After receiving many customer complaints about "over-solicitation", Chevron allegedly declined to renew its branding agreement with Defendants. As a result, Defendants stopped operating the Elko station.

---

[1] We also deny Defendants' motion to strike Plaintiff's notice of supplemental authority.

Defendants next purchased and began operating a gasoline and automobile-service station in Wells, Nevada in 2003.  Customers allegedly began complaining about credit-card charges for higher-than-advertised fuel prices, unauthorized or unnecessary automobile repairs, and parts or repairs that no one installed or completed.  For example, Defendants allegedly switched off their marquee sign that displayed the gasoline price, illuminating only the sign displaying the price of propane.  This tricked some customers into believing that Defendants were selling gasoline at the less expensive propane price.  Twenty-four customers filed complaints about this alleged practice.  Besides their alleged customer scams, Defendants allegedly performed little maintenance on the property, leaving the gasoline storage tanks, propane tanks, and sewage system in disrepair.

In 2013, Defendants decided to sell the Wells station.  They hired real estate agent Jon Walter to market the gas station in Utah.  To facilitate Walter's marketing of the station, Defendants provided Walter with information about its finances and profitability.  But Defendants allegedly inflated the profitability data by basing it on revenue from overcharging customers.  Defendants also allegedly failed to disclose that they spent little revenue on necessary repairs to the property, further inflating the property's value.

That same year, Plaintiff, through his son, contacted Walter and expressed interest in the Wells station.  Walter provided Plaintiff with the Wells station's allegedly inflated financial information.  Over the next year, Plaintiff requested additional financial records and information.  Defendants continued to provide

3

allegedly false and inflated data about the station's finances. Plaintiff also asked if the station needed any foreseeable repairs, which Defendants allegedly denied despite knowing that the gasoline storage tanks, propane tanks, and the sewage system all needed repairs. And when Plaintiff asked why Defendants were selling the station, they allegedly responded that they intended to retire from the gasoline- and service-station business and move to Idaho. Based on the allegedly fraudulent information Defendants provided, Plaintiff bought the Wells station in 2014.

After selling the Wells station to Plaintiff, Defendants bought a gas and service station in New Harmony, Utah, which they currently operate. Defendants have allegedly continued to charge customers for unnecessary tires and automobile repairs at the New Harmony station.

Plaintiff sued Defendants in the District of Utah, asserting nine state-law claims and a federal RICO claim against Defendant Michael Heath. Plaintiff alleged that Michael Heath ran his company, Heath Enterprises Inc., as a racketeering scheme Plaintiff calls "burning the station." "Burning the station" involves buying a gas and automobile-service station, squeezing as much profit out of it as possible by fraudulently overcharging customers and neglecting necessary repairs to the property, and then selling the station to a buyer who is unaware that a lawfully operated station cannot sustain the station's current profits.

Defendants moved to dismiss Plaintiff's claims. The district court dismissed the RICO claim for failure to state a claim and declined to exercise supplemental

jurisdiction over Plaintiff's remaining state claims. Defendants then moved for attorney's fees, which the district court denied. All parties appeal.

## II.

### A.

We first address the dismissal of Plaintiff's RICO claim. We review de novo a district court's dismissal for failure to state a claim. Sacchi v. IHC Health Servs., 918 F.3d 1155, 1157 (10th Cir. 2019). While doing so, we accept the factual allegations in Plaintiff's complaint as true and construe them in the light most favorable to him. See id. We then determine whether Plaintiff's factual allegations, so construed, plausibly entitle Plaintiff to relief under the cause of action asserted. See Young v. Davis, 554 F.3d 1254, 1256 (10th Cir. 2009).

Plaintiff brought a RICO claim under 18 U.S.C. §§ 1962(c) and 1964(c) against Defendant Michael Heath. Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." And § 1964(c) provides a private cause of action for persons harmed by violations of § 1962.

To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." George v. Urb. Settlement Servs., 833 F.3d 1242, 1248 (10th

5

Cir. 2016). "Racketeering activity" consists of the criminal offenses listed in 18 U.S.C. § 1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other. 18 U.S.C. § 1961(5).

Plaintiff alleged that Defendant Michael Heath conducted the affairs of Heath Enterprises Inc., an enterprise, through a pattern of wire fraud, bank fraud, and access-device fraud—crimes that § 1961(1) classifies as racketeering activity. According to Plaintiff, Defendant committed these crimes by fraudulently inducing customers to use their credit cards to buy gasoline and services and then fraudulently inducing Plaintiff to buy the station for more than it was worth. Plaintiff alleged that these predicate crimes formed the RICO pattern Plaintiff calls "burning the station."

The parties do not dispute that Heath Enterprises Inc. qualifies as an enterprise or that Defendant conducted its affairs. They dispute only whether Plaintiff adequately alleged that Defendant engaged in racketeering activity and if so, whether Plaintiff adequately alleged a pattern of that activity. The district court assumed without deciding that Plaintiff adequately alleged Defendant's commission of bank and wire fraud but determined that Plaintiff failed to adequately allege a pattern of such acts under RICO. We agree with the district court that even assuming Plaintiff adequately alleged predicate racketeering acts, he failed to state a RICO claim because he did not adequately allege a RICO pattern.

Determining what constitutes a RICO pattern is no easy task. See H. J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 255 (1989) (Scalia, J., concurring) ("[T]he word 'pattern' in the phrase 'pattern of racketeering activity' was meant to import some

6

requirement beyond the mere existence of multiple predicate acts. . . . But what that something more is, is beyond me.").  The statute offers little help.  Section 1961(5) tells us that a single racketeering act or racketeering acts separated by more than ten years are not a pattern but provides no insight beyond that.  See Sedima, S. P. R. L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985) (explaining that § 1961(5) establishes a necessary—but not sufficient—condition for finding a RICO pattern).

The Supreme Court has attempted to provide some guidance—though whether that guidance provides any more clarity than the statute is subject to dispute.  See H.J. Inc., 492 U.S. at 252 (Scalia, J., concurring) ("I doubt that the lower courts will find the Court's instructions much more helpful than telling them to look for a 'pattern'—which is what the statute already says.").  According to the Supreme Court, a RICO pattern requires that the racketeering predicates relate to each other and amount to a threat of continued racketeering activity.  Id. at 239.  No pattern exists without this "continuity plus relationship."  Id. (emphasis omitted).

Turning first to the relationship requirement, racketeering predicates relate to each other if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  Id. at 240.  We have described this standard as "not a cumbersome one."  Bixler v. Foster, 596 F.3d 751, 761 (10th Cir. 2010) (quoting Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1555 (10th Cir. 1992)).  Predicate acts satisfy the relationship requirement when they make up

one common scheme.  See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990).

Plaintiff alleges the following predicate acts: the fraudulent sale of the Wells station to him, the fraudulent charges to customers of the Wells station, and the fraudulent charges to customers of the Elko and New Harmony stations.  We agree with the district court that the predicate acts involving the Wells Station relate to each other.  Plaintiff alleged that the fraudulent charges to the customers of the Wells station were part of a broader scheme to fraudulently sell the station to Plaintiff at an inflated price.  According to Plaintiff's allegations, Defendants defrauded the Wells-station customers so that the station would seem more profitable to a purchaser of the station.  Thus, the fraudulent sales to the customers of the station and the fraudulent sale of the station to Plaintiff made up a common scheme, had similar purposes, and were interrelated under the loose relationship standard.

But Plaintiff did not allege an adequate relationship between the scheme to inflate the value of the Wells station and the allegedly fraudulent sales to customers at the Elko and New Harmony stations.  Plaintiff did not allege that Defendants sold the Elko station to an unsuspecting purchaser at an inflated price due to the fraudulent sales.  And Plaintiff's allegations do not suggest that Defendants have any plans to do so with the New Harmony station.  The scheme that allegedly victimized Plaintiff—the scheme to sell the Wells station based on fraudulently obtained profits—did not include fraudulent transactions at other gas stations.  Nor has Plaintiff adequately alleged that fraudulent sales at other gas stations were part of any

8

similar or related schemes.  Thus, as to the "burning-the-station" scheme that harmed Plaintiff, his allegations do not reveal that the fraudulent sales at other gas stations were anything but isolated events.

Although Plaintiff sufficiently alleges a relationship among predicate acts at the Wells station, he must also allege that the acts amounted to or threaten continued racketeering activity.  See H.J. Inc., 492 U.S. at 239.  This standard is more stringent than the relationship standard.  See Bixler, 596 F.3d at 761 ("The showing required for continuity . . . is more difficult to meet." (quotation omitted)).

No universal standard precisely defining continuity exists because it ultimately "depends on the specific facts of each case."  H.J. Inc., 492 U.S. at 241–42.  Continuity can be either closed or open ended.  Id. at 241.  Closed-ended continuity is a closed period of repeated racketeering conduct, while open-ended continuity consists of racketeering conduct that threatens future repetition.  Id. Plaintiffs can establish open-ended continuity by showing that the racketeering acts involved implicit or explicit threats of repetition, that they formed the operations of an association that exists for criminal purposes, or that they were the defendants' regular way of conducting a legitimate enterprise.  Id. at 242–43.

Plaintiff alleged that Defendants operated the Wells station for about eleven years.  In that span, Defendants allegedly scammed at least twenty-four customers by tricking them into thinking the propane price applied to gasoline.  Defendants also allegedly fraudulently overcharged at least twenty-five customers for gasoline, tires, or automobile repairs.  And then Defendants allegedly fraudulently sold Plaintiff the

9

station.  Plaintiff argues that each fraudulent transaction constituted a RICO predicate and that the RICO predicates are a regular way Defendants conduct their business—thus establishing open-ended continuity.  [Appellant's Opening Br. at 26]

But Plaintiff claims that a particular racketeering scheme harmed him—the scheme to fraudulently sell the Wells station based on inflated profits from racketeering activity to an unwitting buyer.  Although Plaintiff alleged some unrelated fraudulent sales at the Elko and New Harmony stations, he failed to connect those sales to any similar scheme to "burn the station."  Thus, Plaintiff failed to allege that "burning the station" presents Defendants' regular way of conducting business or that it threatens future repetition.

Plaintiff alternatively argues that he adequately pleaded closed-ended continuity.  Unlike open-ended continuity, closed-ended continuity consists of a closed period of repeated, related racketeering acts that do not necessarily threaten future repetition.  See H.J. Inc., 492 U.S. at 241–42.  Because RICO targets long-term racketeering conduct, closed-ended continuity requires a series of related racketeering acts over a "substantial period of time."  Id. at 242.  We thus consider two factors when determining the existence of closed-ended continuity—the duration of the related predicate acts and the extensiveness of the racketeering scheme. United States v. Smith, 413 F.3d 1253, 1271–72 (10th Cir. 2005) (citing Resol. Tr. Corp. v. Stone, 998 F.2d 1534, 1543 (10th Cir. 1993)), abrogated on other grounds by Boyle v. United States, 556 U.S. 938 (2009).

10

Plaintiff argues that he adequately pleaded closed-ended continuity because he alleged related predicate acts spanning multiple years during Defendants' ownership of the Wells station. We agree with Plaintiff that the duration of the alleged predicate acts supports finding closed-ended continuity. See Resol. Tr., 998 F.2d at 1544 (finding a duration of seven to eighteen months sufficient for closed-ended continuity). But under our precedent, duration alone may not establish closed-ended continuity—we also consider the extensiveness of the alleged racketeering scheme. [2] See Smith, 413 F.3d at 1272 (citing Resol. Tr., 998 F.2d at 1543). When evaluating extensiveness, we consider "the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise." Id. (citation omitted). No factor is required or dispositive; the factors merely guide us in seeking "a natural and commonsense result." Resol. Tr., 998 F.2d at 1543 n.9, 1544 (quotation omitted).

Having considered the extensiveness factors, we find that Plaintiff did not allege a sufficiently extensive scheme to warrant a finding of closed-ended continuity. Plaintiff's third amended complaint potentially alleged twenty-four times

---

[2] The dissent cites authority from outside of this circuit for the propositions that duration is the single most important factor in the continuity analysis and that sufficient duration alone is enough to allege continuity. But our cases make clear that duration and extensiveness are both "especially relevant factors" that guide this Court's inquiry. See Smith, 413 F.3d at 1271–72 (citing Stone, 998 F.2d at 1543). We express no opinion on the conclusions our sister circuits have reached when applying their own precedents.

Defendant tricked customers with the propane-price sign and twenty-five times Defendant overcharged customers for gasoline, tires, or automobile repairs. Assuming that Plaintiff adequately pleaded that each of those transactions constituted a predicate racketeering crime—which we do not decide—Plaintiff alleged fifty racketeering acts, including the fraudulent sale of the station to him. Although many predicate acts and victims can suggest an extensive scheme, all other factors weigh against finding that Plaintiff pleaded an extensive "burn-the-station" scheme.

First, the variety of the alleged predicate acts and injuries was minimal. Every alleged predicate act except for the sale of the station to Plaintiff consisted of overcharging unsuspecting customers. Even if the transactions violated multiple statutes, the underlying fraudulent conduct hardly varied.

Second, Plaintiff did not allege a large or complex scheme. Some facts that we have held relevant to complexity include the number of perpetrators involved, the extent of the planning required to perform the scheme, the extent of the management required to run the scheme, the sophistication of products involved in running the scheme, and the amount of money involved. See Resol. Tr., 998 F.2d at 1545. Plaintiff did not allege that many perpetrators "burned the station." Plaintiff attributed most of the activity involved in selling the station to Defendant Michael Heath and his agent Jon Walter. And Plaintiff attributed the allegedly fraudulent overcharging of customers to Defendant and at most four employees. Plaintiff also did not allege that the scheme required extensive planning or management. Plaintiff alleged only that Defendant ripped off some customers at his gas station, failed to

12

perform routine maintenance on the station, and then sold it to Plaintiff without revealing those facts. Defendant accomplished nearly half of the alleged racketeering predicates by simply switching off a marquee sign displaying the price of gasoline—no extensive planning or management required. And nearly all the alleged racketeering predicates—the fraudulent transactions with customers—involved small amounts of money. Although Plaintiff alleged that he purchased the Wells station for $1.3 million, he did not allege what portion of this purchase price resulted from the inflated profits and concealment of defects. In other words, Plaintiff's failure to allege how much the racketeering predicates inflated the purchase price makes it unclear how much money Defendants defrauded Plaintiff out of in the sale of the station. In any event, the scheme Plaintiff alleged—a scheme to inflate the value of a single property by overcharging some customers and then selling that property to an unwitting buyer without disclosing needed repairs—was neither large nor complex.

Lastly, the nature of the scheme does not support a finding of continuity. According to Plaintiff's third amended complaint, the RICO scheme of "burning the station" is a process of buying gasoline and automobile-service stations, inflating the property's apparent value by fraudulently overcharging customers and neglecting necessary repairs to the property, and then selling the station to an unsuspecting buyer at an inflated price. But Plaintiff alleged that Defendant has performed this scheme only once. Although Plaintiff alleged that Defendant overcharged customers at the Elko and New Harmony stations, Plaintiff failed to allege that any of those transactions formed part of a similar scheme to "burn" those stations.

13

Although establishing continuity does not require the existence of multiple racketeering schemes, the number of schemes is still "highly relevant." H.J. Inc., 492 U.S. at 240. Without a threat of continued illegal activity, a single scheme rarely supports finding continuity. See Sil-Flo, 917 F.2d at 1516 ("While a single scheme may suffice in some instances, here there is simply no indication of a threat of continuing illegal activity."). And a single scheme even less likely supports a continuity finding when the scheme targets only "one discrete goal." See id. Plaintiff alleged only a single scheme with the discrete goal of "burning" the Wells station—inflating its value and dumping it off on an unsuspecting buyer.[3] Thus, the nature of the alleged RICO scheme does not support a finding of extensiveness.

Even if all the allegedly fraudulent transactions committed in operating and selling the Wells station constitute RICO predicates, the predicates were all similar and amounted to a single, noncomplex scheme with a discrete goal. Using these factors to guide us to a "natural and commonsense result," Resol. Tr., 998 F.2d at 1544, and considering the long-term criminal activity RICO targets, see Boone, 972 F.2d at 1556, we hold that Plaintiff did not allege a sufficiently extensive scheme to plausibly support a finding of closed-ended continuity. "At most, what has been alleged is a business deal gone sour . . . and various other torts by the defendants."

---

[3] While the dissent disputes that Plaintiff alleged a single scheme, a plain reading of the third amended complaint makes clear that Plaintiff did exactly that. See Appellant's App. Vol. I at 2 ("Harry S. Johnson alleges a recurring pattern of dishonesty and fraudulent business practices. . . that constitute *a racketeering scheme* known as "burning the station") (emphasis added); see also id. at 54, 55, 55 n. 1, 58, 68, 82 (repeatedly referring Defendants' singular "burning the station" scheme).

14

Sil-Flo, 917 F.2d at 1516. Thus, we affirm the district court's dismissal of Plaintiff's

RICO claim for failure to state a claim upon which relief may be granted.[4]

B.

After the district court dismissed Plaintiff's RICO claim and declined to

exercise supplemental jurisdiction over his state claims, Defendants moved for an

award of attorney's fees.  Defendants argued that three agreements with Plaintiff

entitled them to attorney's fees as the prevailing parties.

When Plaintiff and Defendants agreed to the sale of the Wells station, they

signed a purchase agreement.  They also agreed that Plaintiff would pay $400,000 of

the purchase price in quarterly $25,000 payments and signed a promissory note to

that effect.  As security for the promissory note, the parties executed a deed of trust

on the Wells station.

The purchase agreement, promissory note, and deed of trust all include

attorney's-fees provisions that Defendants argued entitled them to fees as the

---

[4] After dismissing Plaintiff's RICO claim—his only federal claim—the district court declined to exercise supplemental jurisdiction over Plaintiff's remaining state claims.  See Crane v. Utah Dep't of Corr., 15 F.4th 1296, 1314 (10th Cir. 2021) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (citation omitted)). Plaintiff appeals the dismissal of his state claims only because he believes the district court erred in dismissing his RICO claim.  Plaintiff does not argue that the district court abused its discretion in dismissing his state claims if the district court properly dismissed his RICO claim.  Thus, because we affirm the dismissal of Plaintiff's RICO claim, we also conclude that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

prevailing parties on Plaintiff's RICO claim.  But the district court determined that none of the agreements applied to Plaintiff's RICO claim.  The court found that a RICO claim falls outside the scope of the fee provisions in the purchase agreement and promissory note.  The court also found that the fee provision in the deed of trust does not apply to Defendants because they were neither the beneficiaries nor the trustees of the deed of trust.  Defendants appeal the denial of their motion for attorney's fees.  In their opening brief, Defendants argue only that the district court erred in concluding that they were not beneficiaries and thus not entitled to attorney's fees under the deed of trust.  We thus limit our review to that issue.  See City of Colorado Springs v. Solis, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) ("[A]rguments not raised in the opening brief are waived.").

We generally review a denial of attorney's fees for an abuse of discretion. Griffin v. Steeltek, Inc., 261 F.3d 1026, 1028 (10th Cir. 2001).  But when the district court offers a basis for denying attorney's fees, we review its legal analysis de novo. ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 777 (10th Cir. 2011).  Contract interpretation is a question of law we review de novo.  Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1154 (10th Cir. 2008).

The deed of trust's fees provision provides:

To protect the security of the deed of trust, Trustor agrees: . . . To appear in and defend any action or proceeding to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by Beneficiary or Trustee to foreclose this Deed of Trust.

16

The deed of trust identifies the trustor as Plaintiff Harry Johnson, the trustee as Stewart Title Company, and the beneficiary as Land Exchange Corporation, qualified intermediary for Defendants Michael and Dawn Heath.  The district court determined that Land Exchange Corporation—not Defendants—is the beneficiary under the deed of trust and thus the provision does not apply in a lawsuit against Defendants.  Defendants dispute the district court's determination that they are not the beneficiaries under the deed of trust.

But even if Defendants are the beneficiaries under the deed of trust, the fees provision does not entitle them to attorney's fees for prevailing against Plaintiff's RICO claim.[5]  The plain text of the fees provision shows that it applies only to actions affecting the Wells station property or the rights and powers of the beneficiaries under the deed of trust.  Plaintiff's RICO claim was simply a claim for damages from an alleged criminal scheme run by Defendant Michael Heath.  It did not seek to affect any property interests in the Wells station or any of Defendants' rights under the deed of trust.[6]  Thus, the deed

---

[5] We have discretion to affirm on any ground supported by the record, even if not the same reasoning relied on by the district court.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011); Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004).  The exercise of this discretion is appropriate for this contract interpretation issue which requires no factual development, where the contract was presented to the district court for interpretation, where there is no dispute as to the authenticity of the contract, and where we need only decide a question of law.

[6] In their reply brief, Defendants argue that the district court erred in determining that they were prevailing parties only as to the RICO claim.  Thus, Defendants argue, we should consider Plaintiff's state claims when assessing the applicability of the attorney's-fees provisions.  But we do not consider this argument

17

of trust's fees provision does not apply to Plaintiff's RICO claim, and the district court correctly determined that the deed of trust does not entitle Defendants to an award of attorney's fees.

AFFIRMED.

---

because Defendants did not include it in their opening brief.  See Gutierrez v. Cobos, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.") (citation omitted).

*Harry S. Johnson v. Michael Heath, et al.*, Nos. 20-4095, 20-4103
**BACHARACH**, J., concurring in No. 20-4103 and dissenting in
No. 20-4095

This appeal involves allegations that Mr. Michael Heath committed fraud in operating and selling a gas station to Mr. Harry Johnson. After buying the gas station, Mr. Johnson learned that many customers had complained to Mr. Heath about fraudulent practices. The complaints led Mr. Johnson to sue Mr. Heath under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.[1] According to Mr. Johnson, Mr. Heath had inflated profits by cheating customers, which in turn increased the gas station's sale price by creating a façade of profitability.

The district court dismissed all of the claims, and Mr. Heath and his wife unsuccessfully sought an award of attorney fees. Both sides appeal. The majority affirms the dismissal and the denial of a fee award. I agree with the majority on the denial of a fee award and respectfully dissent from the affirmance of the dismissal.

On the RICO claim, the district court found a failure to adequately allege continuity. In my view, however, the district court should have considered the allegations that Mr. Heath had inflated profits by cheating

---

[1]    Mr. Johnson also asserted state-law claims against both Mr. Heath and his wife. But Mr. Johnson's appeal involves only the RICO claim against Mr. Heath.

customers of the gas station. Unlike the majority, I believe that these allegations establish continuity.

## I.    Mr. Johnson needed to allege a pattern of racketeering activity, which required continuity.

Under RICO, Mr. Johnson had to allege facts showing that Mr. Heath had "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (first citing 18 U.S.C. § 1962(c), and then citing *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002)). Together, these elements required continuity of the racketeering activity. *Boone v. Carlsbad Corp.*, 972 F.2d 1545, 1555 (10th Cir. 1992).

**The alleged RICO enterprise.** The alleged RICO enterprise consisted of a corporation run by Mr. Heath and his associates. The corporation had allegedly engaged in a scheme of "burning the station." Appellant's App'x vol. 1, at 25.

The alleged scheme began with Mr. Heath's purchase of a gas station. After purchasing the station, Mr. Heath allegedly maximized profits by cheating customers and neglecting routine maintenance. When profits inevitably dwindled, Mr. Heath would allegedly sell the gas station to an unsuspecting buyer.

**The acts of racketeering.** Mr. Johnson alleges racketeering through various crimes, including wire fraud. The alleged wire fraud consisted of lies to customers and Mr. Johnson. *See id.* at 46–50, 78–82.

The alleged lies to customers included trickery to increase gas sales for roughly 2½ years (January 2012 to May 2014). Mr. Heath would turn off his sign for gas prices, showing instead only a cheaper price for propane. Showcasing the lower propane price, Mr. Heath allegedly tricked customers into thinking that was the price for gas. When customers stopped and bought gas, they would pay the higher gas prices with credit cards.

Mr. Johnson also alleges trickery to increase revenue from tire sales, which led to administrative complaints in 2005, 2007, 2008, 2009, 2011, and 2012. Mr. Heath allegedly hid the complaints from his franchisor by selling tires through a side business.

Mr. Heath allegedly deceived not only customers but also Mr. Johnson through electronic communications

- containing false information about the profitability of the gas station and

- failing to disclose defects in the gas station's fuel tanks and sewer system.

Mr. Heath also allegedly failed to disclose liabilities, like a fuel supplier's notice of default. The notice referred to complaints of misleading

3

advertisements about gas prices, jeopardizing the continued availability of fuel.

**The pattern of racketeering**. Under RICO, Mr. Johnson needed to allege "related" racketeering activities "amount[ing] to or pos[ing] a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "[C]ontinued criminal activity" may be "closed-" or "open-ended." *Id.* at 239, 241. "[C]losed-ended" continuity refers to a discrete but substantial period when the defendant engaged in repeated acts of racketeering. *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993).[2]

## II.    The district court dismisses the RICO claim for failure to allege continued criminal activity.

The district court dismissed the RICO claim. The court acknowledged the allegations of related predicate acts, but questioned the plausibility of the alleged scheme to burn a second gas station.[3] In questioning the

---

[2]    Mr. Johnson also claimed open-ended continuity, which is "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241 (citation omitted). For this claim, Mr. Johnson alleged continuing fraud at another gas station. The district court concluded that the allegations of open-ended continuity were deficient, and the majority agrees. I don't address this conclusion because Mr. Johnson adequately alleged continuity that was closed-ended.

[3]    In district court, Mr. Heath argued that Mr. Johnson had not adequately alleged a predicate RICO offense (wire fraud, bank fraud, or access-device fraud) in selling fuel and services. According to Mr. Heath, Mr. Johnson had failed to plead a pattern of racketeering activity because

4

plausibility of the scheme, the court concluded that Mr. Johnson hadn't adequately alleged continued criminal activity.

## III.   The complaint states a valid RICO claim.

Mr. Johnson challenges the dismissal of his RICO claim, arguing that he adequately alleged continued criminal activity. I agree.

### A.   We should credit Mr. Johnson's allegations.

I would conduct de novo review of the dismissal. *Solar v. City of Farmington*, 2 F.4th 1285, 1289 (10th Cir. 2021). In conducting this review, I would credit the well-pleaded allegations in the third amended complaint, construing them favorably to Mr. Johnson. *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018). To withstand dismissal, the allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim is plausible only if the factual allegations in the third amended complaint would have allowed a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

- he hadn't adequately alleged predicate acts and

- the predicate acts hadn't related to Mr. Johnson's economic injury.

The district court assumed the adequacy of allegations involving wire fraud and bank fraud.

5

**B.    The allegations create a plausible inference of wire fraud.**

On appeal, Mr. Heath contends that Mr. Johnson failed to adequately allege the elements of wire fraud, bank fraud, or access-device fraud. The majority does not address this contention, holding instead that Mr. Johnson's claim fails because he did not allege a pattern. For the sake of argument, we can assume that Mr. Johnson hasn't adequately alleged bank fraud or access-device fraud. But Mr. Johnson adequately pleaded wire fraud through misrepresentations to customers.

Wire fraud contains three elements: (1) "a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of interstate wire or radio communications to execute the scheme." *United States v. Zander*, 794 F.3d 1220, 1230 (10th Cir. 2015) (citation omitted). Mr. Heath challenges the third element based on a failure to allege that he had used a wire or radio communications to defraud customers.

In alleging that Mr. Heath had defrauded customers of the gas station, Mr. Johnson pointed to the fuel supplier's notice of default. The notice of default stated that for a year, the operator of the gas station had turned off the sign for gas prices and showed only the propane prices, deceiving customers as to the actual prices for gas. Appellant's App'x vol. 1, at 167. The notice confirmed 24 complaints about this practice. *Id.* Given the notice of default, I regard the fraud allegations as plausible.

6

Mr. Heath points out that he didn't use a wire to deceive customers. But his customers allegedly used wires to pay him, and he could commit wire fraud even if he weren't the person using a wire. So a plausible claim of wire fraud could arise from Mr. Heath's reasonable expectation that his customers would use wires to pay him. *See Zander*, 794 F.3d at 1231 (concluding that the government's payment through a wire transfer had sufficed for wire fraud because the defendant could have reasonably foreseen the use of a wire transfer); *see also United States v. Feldman*, 931 F.3d 1245, 1257–59 (11th Cir. 2019) (concluding that wire fraud could consist of a scheme to lure victims into the defendant's nightclub if they would use their credit cards to overpay for beverages).

Mr. Johnson adequately alleged such a use of the wires. In the third amended complaint, Mr. Johnson alleged that

- Mr. Heath had made misrepresentations to customers through misleading signs on gas prices, sales of unnecessary products and services, and excessive charges for tires, and

- those misrepresentations had induced customers to use credit cards to buy gas, tires, and services.

Appellant's App'x vol. 1, at 47–51. A factfinder could view payment with a credit card as reasonably foreseeable, so Mr. Johnson adequately pleaded wire fraud.

7

### C.    Mr. Johnson adequately alleges closed-ended continuity.

In dismissing the RICO claim, the district court found a failure to adequately allege closed-ended continuity. Mr. Johnson disagrees, urging continuity based on Mr. Heath's alleged acts to inflate profits and then lure an unsuspecting buyer to purchase the gas station based on a deceptive record of profitability.

We should assess the adequacy of the third amended complaint based on the duration and extent of the scheme. *See Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993).

Under this test, we should first consider duration. *Id.* Because continuity is "centrally a temporal concept," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989), duration is "the most important" factor, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 781 (7th Cir. 1994); *see United States v. Pellullo*, 964 F.2d 193, 208 (3d Cir. 1992) (stating that "duration remains the most significant factor" for continuity (citations omitted)).

I would also consider the extent of the scheme. *Resol. Tr. Corp.*, 998 F.2d at 1543. The inquiry is fact-specific and no single factor is dispositive. *See Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty, Ill.*, 424 F.3d 659, 672–73 (7th Cir. 2005) (stating that "[n]o one factor is dispositive" on continuity and the inquiry is "fact-specific" (citation omitted)). So continuity is ordinarily a fact-issue for the trier of fact. *See*

8

*Pelullo*, 964 F.2d at 210 ("Ultimately, . . . continuity is a factual issue for the jury.").

The majority concludes that Mr. Johnson has adequately alleged the duration of the alleged predicate acts. Maj. Op. at 10–11. I agree.

For duration in the context of closed-ended continuity, the alleged predicate acts must "extend[] over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. A period of "a few weeks or months" is not "substantial." *Id.* Though no minimum time-period exists, we've regarded a period of 7–18 months as long enough for continuity. *Resol. Tr. Corp.*, 998 F.2d at 1542.

Mr. Johnson alleges that he received fraudulent financial data and statements for at least fifteen months (March 2013 to June 2014). *See* Appellant's App'x vol. 1, at 26–27, 29–30, 78–82. For most of this time, Mr. Heath was also allegedly deceiving customers of the gas station. *See id.* at 31–32, 48–49, 50–52. Like the majority, I conclude that these allegations satisfy the duration required for closed-ended continuity.

For the extent of the scheme, I would consider the number of victims, the number and variety of racketeering acts, the complexity and size of the scheme, and the nature of the scheme. *Resol. Tr. Corp.*, 998 F.2d at 1544–45. The majority acknowledges that Mr. Johnson's allegations involve many predicate acts and victims. But the majority then concludes that

- little variety existed in the kinds of predicate acts and injuries,

9

- the alleged scheme was neither large nor complex, and

- Mr. Heath allegedly cheated only one buyer (Mr. Johnson) by inflating the profits of the gas station.

In the majority's view, these factors show that the alleged scheme was too narrow for closed-ended continuity. In my view, however, the majority fails to apply the party-presentation rule and misapplies the standards for dismissal and closed-ended continuity.

Though the majority discounts the extent of the scheme, Mr. Heath never questioned satisfaction of this factor. In district court, Mr. Heath challenged closed-ended continuity based only on the lack of "any viable predicate criminal acts." Appellant's App'x vol. 2, at 542. And on appeal, Mr. Heath argued only that the allegations had amounted to "common-law fraud" rather than "RICO fraud." Appellees' Resp. Br. at 47. But Mr. Heath has never questioned the extent of the alleged scheme.

Because Mr. Heath hasn't questioned the extent of the alleged scheme, I don't think we should, for "we don't typically 'craft[] arguments for affirmance completely *sua sponte* and, more specifically, without the benefit of the parties' adversarial exchange.'" *United States v. Woodard*, 5 F.4th 1148, 1154 (10th Cir. 2021) (italics and second alteration in original) (quoting *United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020)).

10

Granted, we can affirm on alternative grounds. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). But we generally regard it as "imprudent" to affirm on alternative grounds when the parties haven't fully briefed the issue or had a fair opportunity to develop the record. *See United States v. Woodard*, 5 F.4th 1148, 1154 (10th Cir. 2021) ("In the best of circumstances, we consider it 'imprudent' to craft arguments sua sponte to affirm on alternate grounds."); *United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) ("As a jurisprudential matter, [crafting arguments for affirmance sua sponte and without the benefit of the parties' adversarial exchange] is imprudent . . . .").

Even if we were to address the issue on our own, without the benefit of briefing either in district court or the appeal, I believe that the majority has misapplied the standards for dismissal and closed-ended continuity.

In reviewing a dismissal under Rule 12(b)(6), we should not only credit the allegations in the third amended complaint but also view these allegations in the light most favorable to Mr. Johnson. *Davis-Warren Auctioneers, J.V. v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000). For continuity, Mr. Johnson needed only to allege "some facts from which at least a threat of ongoing illegal conduct may be inferred." *Pitts v. Turner & Boisseau Chartered*, 850 F.2d 650, 652 (10th Cir. 1988) (quoting *Torwest DBC, Inc. v. Dick*, 810 F.2d 925–27 (10th Cir. 1987)).

11

By denying continuity based on extensiveness, the majority overrides the most important factor: duration. Although the extent of the scheme is also pertinent, we should generally focus on whether the wrongful acts are "sporadic" or part of a greater pattern. *Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). As a result, closed-ended continuity is often found whenever the duration is sufficient. *See Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (concluding that the plaintiff adequately alleged continuity because the predicate acts had extended over several years); *Walk v. Balt. & Ohio R.R.*, 890 F.2d 688, 690 (4th Cir. 1989) (concluding that the plaintiff adequately alleged closed-ended continuity because the activity had lasted ten years); *Dana Corp. v. Blue Cross & Blue Shield Mut. N. Ohio*, 900 F.2d 882, 886–87 (6th Cir. 1990) (concluding that the plaintiff sufficiently alleged continuity as to a scheme lasting seventeen years). The majority implicitly concludes, with no briefing or argument, that these circuits are wrong in finding closed-ended continuity based solely on duration.

The majority concludes that the scheme was not extensive, relying on a narrow reading of the third amended complaint. This complaint describes a scheme, committed over multiple years, to ensnare countless drivers needing gas or repairs. For example, the alleged scheme included acts to inflate gas sales by tricking customers on the gas price, overcharging customers' credit cards for auto repairs and services, altering customer

12

invoices, charging customers for parts and repairs that hadn't been installed, misrepresenting safety conditions, tricking customers into buying tires, and installing inferior tires after selling higher quality tires.

The majority characterizes the conduct as only a single scheme because Mr. Heath would unload the gas station on only a single unsuspecting buyer. Maj. Op. at 13–14. This characterization is questionable for two reasons: (1) Mr. Heath has never questioned *closed*-ended continuity based on the existence of a single scheme, and (2) the third amended complaint identifies multiple schemes.

On appeal, Mr. Heath challenges the allegations of *open*-ended continuity based in part on the existence of a single scheme. I assume for the sake of argument that Mr. Johnson hasn't adequately alleged *open*-ended continuity.

But Mr. Heath hasn't questioned *closed*-ended continuity based on the singularity of the scheme. So we lack any briefing or even argument on whether closed-ended continuity can exist through only a single scheme. Despite the lack of briefing, the majority rejects closed-ended continuity based on the existence of a single scheme. I think it imprudent to reject closed-ended continuity on a theory that Mr. Heath hasn't presented. *See* pp. 10–11, above.

Even if we were to consider the issue, I question how we can liberally interpret the third amended complaint to allege only a "single"

13

scheme. In the third amended complaint, Mr. Johnson alleged that Mr. Heath had run the tire shop separately from the gas station in order to hide customer complaints. And in the third amended complaint, Mr. Johnson had alleged payments from 50 separate victims (including Mr. Johnson) for discrete acts of fraud. At the motion-to-dismiss stage, I question how we can shoehorn Mr. Johnson's allegations into a single scheme directed at a single individual.

In any event, the existence of a single scheme would not preclude closed-ended continuity. The issue of continuity focuses on whether the predicate acts constitute "a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243 (1989). So even when the predicate acts "arise under a single scheme," closed-ended continuity may exist when the conduct reflects a regular way of conducting business. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). And the third amended complaint alleges "a years-long pattern" of fraudulent business practices at both the gas station and tire shop. Appellant's App'x vol. 1, at 51. That pattern could reflect closed-ended continuity even if Mr. Heath had used only a single fraudulent scheme.

The majority also downplays the complexity of the scheme even though Mr. Heath has never challenged closed-ended continuity based on a lack of complexity. I'd be wary of deciding sua sponte, without any

14

briefing or argument, that the alleged scheme—lasting at least 15 months and involving 49 customers and the plaintiff himself—wasn't complex enough for closed-ended continuity. *See* pp. 10–11, above.

Finally, the majority reasons that Mr. Johnson hasn't quantified the amount that he overpaid as a result of the scheme to inflate profits. Maj. Op. at 13. Mr. Heath has never made this argument, and it doesn't neatly fit the inquiry on closed-ended continuity. The majority acknowledges that Mr. Heath had allegedly defrauded at least 49 customers to inflate profits. And the majority has not questioned the adequacy of Mr. Johnson's allegations that he had overpaid because of those fraudulent acts. Why would the failure to quantify the amount of the overpayment affect characterization of the scheme as isolated or sporadic? The answer isn't self-evident to me, and Mr. Heath hasn't suggested that closed-ended continuity would turn on the amount that he had overpaid.

Given the relation between the predicate acts, I would view them together when assessing the duration and extent of the scheme. The alleged scheme spanned at least 15 months and victimized not only Mr. Johnson but also at least 49 customers. That scheme, if proven, could entail continuity over a closed period. In my view, the district court thus erred in finding a failure to adequately allege continued criminal activity.[4]

---

[4]     Because Mr. Johnson adequately alleged closed-ended continuity, I don't address his arguments on open-ended continuity. *See* p. 13, above.

15

### D.    Mr. Johnson adequately pleaded causation.

Mr. Heath challenges not only plausibility but also causation between the predicate offenses and Mr. Johnson's alleged injuries. In reviewing this challenge, I would conclude that Mr. Johnson adequately pleaded causation.

To adequately plead a RICO violation, Mr. Johnson needed to allege predicate acts that had actually and proximately caused his injury. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010). Proximate causation "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). When the alleged conduct involves fraud, a direct relation can arise from the plaintiff's reliance on misrepresentations. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014). Mr. Johnson adequately alleged causation under this standard.

Mr. Heath argues that the allegations of overcharging customers "are completely unrelated to" Mr. Johnson's alleged injury. Appellees' Opening Br. at 51. But Mr. Johnson has (1) alleged injury from monetary losses in buying the gas station and (2) tied those losses to predicate acts constituting wire fraud. Appellant's App'x vol. 1, at 78–82, 85. Mr. Johnson alleged that

- he had paid too much for the gas station because of Mr. Heath's misrepresentations and

16

- Mr. Heath's deception of customers had caused Mr. Johnson to experience unforeseen losses.

These allegations create actual and proximate causation between the predicate acts of wire fraud and Mr. Johnson's alleged financial losses. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 890–91 (10th Cir. 2017) (finding proximate causation based on the plaintiffs' own injuries). Mr. Johnson has thus adequately alleged causation.

\*\*\*

Because Mr. Johnson adequately pleaded wire fraud, closed-ended continuity, and causation, I would reverse the dismissal of the RICO claim. This reversal would also affect the disposition of the state-law claims, so I would also reverse the dismissal of those claims.